UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:05CV-63-R

WESTLAKE VINYLS, INC.                                                                               PLAINTIFF

v.

GOODRICH CORPORATION                                                                        DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on Plaintiff Westlake Vinyls, Inc.'s Motion for Partial Summary Judgment with respect to Counts II and IV of its complaint (Docket #17). Defendant filed a response (Docket #22) to which Plaintiff has replied (Docket #28). This matter is now ripe for adjudication. For the reasons that follow, Westlake's Motion for Partial Summary Judgment with respect to Counts II and IV of the complaint is DENIED.

**BACKGROUND**

Beginning in the 1950s, Goodrich owned and operated chemical manufacturing plants at the former BF Goodrich Industrial Complex in Calvert City, Kentucky (the "Facility"). For nearly forty years, Goodrich used unlined, earthen ponds to treat, store, and dispose of hazardous waste. One of these ponds was Pond 4. In 1986, Goodrich began to close these ponds, including Pond 4, pursuant to a Resource Conservation and Recovery Act ("RCRA") interim status Closure Plan. In closing Pond 4, Goodrich excavated the material from the pond and placed it in a lined RCRA hazardous waste closure cell, along with material from its other ponds. Goodrich then backfilled the area where Pond 4 had been located to create a level, open ground surface. Pond 4 was certified as closed by the Natural Resources and Environmental Protection Cabinet of the Commonwealth of Kentucky, the predecessor to the Environmental and Public Protection Cabinet (the "Cabinet"),

in 1989.

On September 29, 1989, the Cabinet and the United States Environmental Protection Agency ("EPA") issued permits to Goodrich under RCRA and the Hazardous and Solid Waste Amendments (collectively the "1989 Permit"), with permit number KYD-006-370-167. The 1989 Permit required Goodrich to monitor and maintain the closure cell's integrity for at least the next thirty-six years, to remediate contamination at the Facility, and to take responsibility for environmental issues involving the Pond 4 post-closure requirements.

In 1996, Goodrich submitted to the Cabinet a clean closure equivalency demonstration ("CCED") for Pond 4. The purpose of a CCED is to demonstrate that a unit is closed according to applicable regulations and that the unit requires no further action to address environmental concerns.

In 1997, Goodrich sold an ethylene plant and a chlorine plant (collectively referred to as the "CA&O Plant") to Westlake, including the property where Pond 4 had been located. At the time of the 1997 transaction, Goodrich's CCED for Pond 4 was pending before the Cabinet. The sale was memorialized in a July 16, 1997 Purchase and Sale Agreement and an amendment dated August 15, 1997 (together the "1997 Agreement").

Pursuant to Section 1.4(d) of the 1997 Agreement, Goodrich expressly agreed to retain all liabilities arising out of the assets sold to Westlake:

> Westlake, however, shall not assume any liability or obligation, known or unknown, fixed, contingent or otherwise of [Goodrich], and [Goodrich] and its affiliates shall retain all liabilities and obligations, whether primary or secondary, direct or indirect, or fixed, absolute or contingent, with respect to or arising out of the use, operation or ownership of the CA&O Plant, or the ownership, possession or use of the Assets, or the employment or compensation of any of the employees, prior to the Closing, unless expressly provided otherwise herein, all of such liabilities or obligations being herein referred to as the "Retained Liabilities".

The term Assets is defined in Section 1.1 of the 1997 Agreement as "the assets and properties

described in Section 1.2" of the 1997 Agreement. Pond 4 is specifically included in the amended Section 1.2 and thus qualifies as an Asset under Section 1.4(d) of the 1997 Agreement. Pond 4 was also used by Goodrich in connection with the CA&O Plant.

Section 8.2 of the 1997 Agreement contains an indemnification clause:

8.2.<u>Indemnification by [Goodrich]</u>.  From and after the Closing, [Goodrich] shall indemnify and save Westlake harmless from and against any and all loss, cost, damage, claim, judgment, fine, penalty, debt, liability or expense, including, without limitation, reasonable fees and disbursements of counsel incurred by Westlake in investigating and defending any such claim with reimbursement on a current basis (herein collectively referred to as "Liability" or "Liabilities") which results from or arises out of or occurs in connection with:

    (a)  the Retained Liabilities;

    (b) . . . any breach of any covenant, representation, warranty, agreement or obligation of [Goodrich] contained herein . . . ;

    (c) . . . damage to any property or the investigation or remediation of any soil, surface water and/or groundwater resulting from or attributable to events occurring or any condition existing prior to the Closing Date and arising in any way incident to the ownership, use and/or operation of the CA&O Plant by [Goodrich] prior to the Closing Date . . .

Pursuant to Section 8.4 of the 1997 Agreement, Westlake is entitled to recover from Goodrich under Section 8.2 if Westlake's loss equals or exceeds $100,000, or equals or exceeds $25,000 with respect to any loss incurred pursuant to Section 8.2(c).

Westlake incurred a comparable indemnity obligation, which provided that:

8.3.<u>Indemnification by Westlake</u>.  From and after the Closing Date, Westlake shall indemnify and save [Goodrich] harmless from and against any Liability which results from arises out of or occurs in connection with:

. . .

(c) any . . . damage to any property or the investigation or remediation of any soil, surface water and/or groundwater resulting from or attributable to events occurring from and after the Closing Date and arising from or in any way incident to the

3

>ownership, use and/or operation of the CA&O Plant by Westlake after the Closing Date . . .

Goodrich withdrew its CCED application in December of 2000. Goodrich asserts that it consulted with Westlake prior to withdrawing the application and that Westlake had no objection to the withdrawal.

On September 30, 2003, the Cabinet reissued the RCRA permit under the same permit number KYD-006-370-167 to Goodrich.

On January 9, 2004, the Cabinet requested that Westlake submit a RCRA Part B Post Closure permit application for former Pond 4. Opting not to submit the application, Westlake challenged the January 9, 2004 Cabinet decision by initiating an administrative proceeding on February 6, 2004 ("Administrative Proceeding"). The Administrative Proceeding has yet to be resolved. Additionally, Westlake has begun preparing a Part B permit application for Pond 4. Westlake has also filed the instant action, seeking, among other things, an order forcing Goodrich to indemnify Westlake. Westlake asserts that the costs in undertaking all of these activities, which are in excess of $100,000, constitute losses arising out of Westlake's ownership of the real property where Pond 4 was located, for which Goodrich is obligated to indemnify Westlake and pay Westlake's attorney's fees. By letter dated March 17, 2005, pursuant to Section 8.5 of the 1997 Agreement, Westlake provided Goodrich with written notice of its claim for indemnification. Goodrich has refused to indemnify Westlake.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is

entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

"The right to recover under an indemnification agreement is well recognized in Kentucky." *United States v. Hardy*, 916 F. Supp. 1373, 1383 (W.D. Ky. 1995); *see United States Fid. & Guar. Co. v. Napier Elec. & Constr. Co., Inc.*, 571 S.W.2d 644, 646 (Ky. Ct. App. 1978). "The nature of

an indemnitor's liability under an indemnity contract shall be determined by the provisions of the indemnity agreement itself." *Napier*, 571 S.W.2d at 646. "[P]arties may contractually provide for indemnification for--among other things--the costs incident to potential legal liability as well as for the legal liability itself." *Thompson v. Budd Co.*, 199 F.3d 799, 808 (6th Cir. 1999).

"[T]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Frear v. P.T.A. Indus.*, 103 S.W.3d 99, 105 (Ky. 2003) (quoting *First Commonwealth Bank v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000)). "[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms." *Id.* (quoting *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966)). The Court will "interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Id.* If an ambiguity exists, "the court will gather, if possible, the intent of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written, by evaluating extrinsic evidence as to the parties' intentions." *Id.* (internal quotation omitted).

In this action, Westlake seeks indemnification from Goodrich for the costs of defending itself against the Cabinet's January 9, 2004 order; of engaging in the process of drafting a permit application for Pond 4; and of pursuing the instant action against Goodrich for indemnification. Westlake asserts that the total of these costs is well in excess of $100,000 but does not specify how much of the alleged $100,000 in costs falls within each category.

According to the 1997 Agreement, Westlake's right to indemnification from Goodrich is triggered under Section 8.2 if Westlake's loss equals or exceeds $100,000, or equals or exceeds $25,000 with respect to any loss incurred pursuant to Section 8.2(c). Until Westlake's losses reach

this threshold amount, Westlake may not state a valid claim for indemnification. Therefore, Westlake may not file a claim for indemnification and then include its attorney's fees and costs in litigating that claim in calculating its losses for purposes of asserting that its loss has met the threshold amount.

As Westlake has failed to show that the costs of defending itself against the Cabinet's January 9, 2004 order and of engaging in the process of drafting a permit application for Pond 4 meets the threshold amounts under Section 8.2 of the 1997 Agreement, Westlake is not entitled to a grant of partial summary judgment.

## CONCLUSION

For the foregoing reasons, Westlake's Motion for Partial Summary Judgment with respect to Counts II and IV of the complaint is DENIED at this time.

An appropriate order shall issue.