UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:05CV-63-R

WESTLAKE VINYLS, INC.                                                                                           PLAINTIFF

v.

GOODRICH CORPORATION                                                                                     DEFENDANT

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Goodrich Corporation's Motion to Dismiss Counts I and III of Plaintiff Westlake Vinyls, Inc.'s complaint against it (Docket #4). Plaintiff filed a response (Docket #11) to which Defendant has replied (Docket #14). This matter is now ripe for adjudication. For the reasons that follow, Goodrich's Motion to Dismiss Counts I and III of the complaint is GRANTED.

**BACKGROUND**

Beginning in the 1950s, Goodrich owned and operated chemical manufacturing plants at the former BF Goodrich Industrial Complex in Calvert City, Kentucky (the "Facility"). For nearly forty years, Goodrich used unlined, earthen ponds to treat, store, and dispose of hazardous waste. One of these ponds was Pond 4. In 1986, Goodrich began to close these ponds, including Pond 4, pursuant to a Resource Conservation and Recovery Act ("RCRA") interim status Closure Plan. In closing Pond 4, Goodrich excavated the material from the pond and placed it in a lined RCRA hazardous waste closure cell, along with material from its other ponds. Goodrich then backfilled the area where Pond 4 had been located to create a level, open ground surface. Pond 4 was certified as closed by the Natural Resources and Environmental Protection Cabinet of the Commonwealth of Kentucky, the predecessor to the Environmental and Public Protection Cabinet (the "Cabinet"),

in 1989.

On September 29, 1989, the Cabinet and the United States Environmental Protection Agency ("EPA") issued permits to Goodrich under RCRA and the Hazardous and Solid Waste Amendments (collectively the "1989 Permit"), with permit number KYD-006-370-167. The 1989 Permit required Goodrich to monitor and maintain the closure cell's integrity for at least the next thirty-six years, to remediate contamination at the Facility, and to take responsibility for environmental issues involving the Pond 4 post-closure requirements.

In 1997, Goodrich sold an ethylene plant and a chlorine plant (collectively referred to as the "CA&O Plant") to Westlake, including the property where Pond 4 had been located. The sale was memorialized in a July 16, 1997 Purchase and Sale Agreement and an amendment dated August 15, 1997 (together the "1997 Agreement"). Pursuant to a joint request by Goodrich and Westlake, the Cabinet issued a letter on July 29, 1997, stating that Westlake would not need to be added to the 1989 Permit by virtue of its acquisition of the CA&O Plant and that Goodrich would remain responsible for activities related to the 1989 Permit on the property conveyed to Westlake.

As part of the 1997 Agreement, Goodrich and Westlake agreed that Westlake could reconvey the Pond 4 property to Goodrich upon the occurrence of certain events. Section 1.2(a) of the 1997 Agreement states, in pertinent part:

> [T]he portion of the property formerly used as the # 4 pond by [Goodrich] shall be subject to reconveyance to [Goodrich] in the event that Westlake's ownership of the # 4 pond would in and of itself be solely responsible for Westlake's being added as a permittee to the [Goodrich] RCRA Permits, as those terms are defined in the Environmental Services Agreement prepared pursuant to Section 6.6 until such time as said pond # 4 receives confirmation of clean closure at which time [Goodrich] shall promptly reconvey such property to Westlake . . .

The reference Environmental Services Agreement ("ESA") defining Goodrich's RCRA Permits

states:

>The hazardous waste landfill and two adjacent ponds are currently undergoing post-closure care pursuant to Subtitle C of the Resource Conservation and Recovery Act ("RCRA") as amended by the Hazardous and Solid Waste Amendments ("HSWA"). The post-closure care is required by the Commonwealth of Kentucky Natural Resources and Environmental Protection Cabinet . . . and the United States Environmental Protection Agency . . . under RCRA and HSWA Permits #KYD-006-370-167 (hereinafter collectively referred to as "Permits").

On September 30, 2003, the Cabinet reissued the Permits under the same Permit Number KYD-006-370-167 to Goodrich. Goodrich remains responsible for Pond 4 under the 2003 Permit.

On January 9, 2004, the Cabinet requested that Westlake submit a RCRA Part B Post Closure permit application for former Pond 4. Opting not to submit the Application, Westlake challenged the January 9, 2004 Cabinet decision by initiating an administrative proceeding on February 6, 2004 ("Administrative Proceeding"). The Administrative Proceeding has yet to be resolved. Westlake attempted to reconvey Pond 4 to Goodrich on April 15, 2004. Goodrich refused to accept the reconveyance.

Westlake filed this Complaint on March 21, 2005, alleging that:

>Due to the Cabinet's determination that Westlake's ownership of the area of former Pond 4 requires it to assume the RCRA permit obligations of Goodrich, Westlake has the right, pursuant to paragraph 1.2(a) of the 1997 PSA Amendment, to reconvey former Pond 4 back to Goodrich.

Count I of Westlake's Complaint alleges a cause of action for breach of contract and demands damages and specific performance regarding Westlake's reconveyance of Pond 4. Count III demands a declaratory judgment that Goodrich is required to specifically perform the 1997 Agreement and accept reconveyance of Pond 4. On March 20, 2005, Goodrich filed a Motion to Dismiss Counts I and III of Westlake's Complaint.

**STANDARD**

Goodrich has moved the Court to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted. "When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

## DISCUSSION

Goodrich argues that Westlake has failed to state a claim for which relief may be granted. Goodrich interprets the 1997 Agreement as permitting Westlake to reconvey Pond 4 only upon Westlake being added to Goodrich's RCRA permit, specifically permit number KYD-006-370-167. Wesltake interprets the 1997 Agreement as allowing it to reconvey Pond 4 if its ownership of Pond 4 would require it to submit an RCRA permit application.

Under Kentucky law, a cause of action for breach of contract must state "the contract, the breach and the facts which show the loss or damage by reason of the breach." *Fannin v. Commercial Credit Corp.*, 249 S.W.2d 826, 827 (Ky. 1952). "[T]he construction and interpretation

4

of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *Frear v. P.T.A. Indus.*, 103 S.W.3d 99, 105 (Ky. 2003) (quoting *First Commonwealth Bank v. West*, 55 S.W.3d 829, 835 (Ky. Ct. App. 2000)).  The Court must first determine whether the terms of the 1997 Agreement are ambiguous as that will determine how the Court's interpretative analysis will proceed.  *Id.* at 105-06.  If an ambiguity exists, "the court will gather, if possible, the intent of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written, by evaluating extrinsic evidence as to the parties' intentions."  *Id.* (internal quotation omitted). However, "in the absence of ambiguity a written instrument will be enforced strictly according to its terms."  *Id.* (quoting *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966)).  The Court will "interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence."  *Id.*

Section 1.2(a) of the 1997 Agreement permits Westlake to reconvey Pond 4 if Westlake's ownership of Pond 4 would "in and of itself be solely responsible for Westlake's being added as a permittee to the [Goodrich] RCRA Permits, as those terms are defined in the Environmental Services Agreement."  The ESA defines the Permits as RCRA and HSWA Permits #KYD-006-370-167. Thus, according to the plain language of the 1997 Agreement, Westlake is entitled to reconvey Pond 4 to Goodrich only if Westlake's ownership of Pond 4 would in and of itself be solely responsible for Westlake's being added as a permittee to Permit #KYD-006-370-167.  Although Westlake argues that read as a whole, the 1997 Agreement demonstrates the parties' mutual intent that Westlake would never incur RCRA permit responsibility for Pond 4, the portion of the 1997 Agreement permitting Westlake to reconvey Pond 4 limits reconveyance to this specific situation.  *See Bank of*

5

*Tokyo-Mitsubishi, Ltd. v. Kvaerner*, 243 A.D.2d 1, 8 (N.Y. App. Div. 1998) ("[I]f there is an inconsistency between a general provision and a specific provision of a contract, the specific provision controls."), *cited in B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 587, 596 (6th Cir. 2001).

Westlake, however, asserts that at the time the 1997 Contracts were executed, the only procedure by which Westlake could have assumed RCRA permit liability for the property would have been by a major modification of the existing permit pursuant to 401 KAR 38:040 Sections 1 and 2(4). Westlake claims that the Cabinet is now contending that there is a new and different procedure available to require Westlake to obtain a separate permit for Pond 4, citing 401 KAR 38:010. Westlake argues that Goodrich is attempting to exploit the Cabinet's reversal of its longstanding position.

Westlake relies on the decision in *Ohio, Pennsylvania, and West Virginia Coal Co. v. Panenergy Corp.* to support its position. In *Panenergy*, the defendant PanEnergy Corporation sold to the plaintiffs a coal company known as Y&O. 120 F.3d 607, 609 (6th Cir. 1997). Among other things, Y&O was the settlor of an irrevocable trust established to satisfy black lung liabilities. *Id.* Before the transaction closed, legislation was proposed in Congress that sought to impose liability on coal companies for health benefits of retired miners. *Id.* Therefore, in the contracts documenting the sale, the defendant agreed to "hold harmless [plaintiffs] against any liability for Y&O having to make payments into the UMWA health benefits trust funds" as a result of the proposed legislation. *Id.* Two years later Congress passed the legislation. *Id.* at 610. The law as enacted allowed liabilities to be paid out of overfunded black lung trusts, such as the Y&O trust, which was not permitted at the time of the contract's execution. *Id.* Plaintiffs used the Y&O trust to pay Y&O's

liabilities and sought reimbursement from the defendant under the indemnity provision. *Id.* When the defendant refused, plaintiffs sued. *Id.* The district court granted summary judgment to the plaintiffs, holding that the contract language was unambiguous. *Id.* The Sixth Circuit reversed, holding that the district court "should have looked only at the law in effect at the time of the execution in its attempt to gain an understanding of the parties' intent. *Id.* at 612. The district court's interpretation did not accurately reflect the legal framework that existed at the time of the contract's execution, and the defendant was entitled to reversal of the judgment against it. *Id.*

Although "[i]t is elementary that the law in force when and where a contract is made forms a part of the contract . . . and the parties are presumed to contract with reference to existing law," *Ky. Utils. Co. v. Pub. Serv. Comm'n*, 252 S.W.2d 885, (Ky. 1952), the last effective date of any changes to 401 KAR 38:010 is March 12, 1997, more than four months before the July 16, 1997 Purchase and Sale Agreement and five months before the Amendment dated August 15, 1997. Unlike the situation in *Panenergy*, the Cabinet is not applying some new law that was promulgated after the parties negotiated the 1997 Agreement, rather the Cabinet is applying the law in force when the contract was made.

As the Cabinet has made no attempt to add Westlake as a permittee to Permit #KYD-006-370-167, Westlake has no right to reconvey Pond 4. Therefore, Goodrich did not breach the 1997 Agreement by failing to accept the reconveyance.

## CONCLUSION

For the foregoing reasons, the Goodrich's Motion to Dismiss Counts I and III of the complaint is GRANTED.

An appropriate order shall issue.